# `IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| VICTOR MOCANU | : | CIVIL ACTION |
| v. | : | |
| ROBERT S. MUELLER, et al. | : | NO. 07-0445 |

| | | |
|---|---|---|
| GUISEPPE CUSUMANO | : | CIVIL ACTION |
| v. | : | |
| ALBERTO GONZALES, et al. | : | NO. 07-0971 |

| | | |
|---|---|---|
| MOHAMMAD BARIKBIN | : | CIVIL ACTION |
| v. | : | |
| UNITED STATES, et al. | : | NO. 07-3223 |

| | | |
|---|---|---|
| TONGZIAO ZHANG | : | CIVIL ACTION |
| v. | : | |
| MICHAEL CHERTOFF, et al. | : | NO. 07-2718 |

| | | |
|---|---|---|
| ANDREW O. NEWTON, M.D. | : | CIVIL ACTION |
| v. | : | |
| DONALD MONICA, et al. | : | NO. 07-2859 |

| | | |
|---|---|---|
| JEAN ELISSAINT | : | CIVIL ACTION |
| v. | : | |
| UNITED STATES, et al. | : | NO. 07-4747 |

| | | |
|---|---|---|
| SAID HUSSAIN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| MICHAEL B. MUKASEY, et al. | : | NO. 08-195 |

### MEMORANDUM AND ORDER

**Baylson, J.**                                                                                    **January 25, 2008**

A further hearing in these cases was held on January 22, 2008, following prior hearings and Memoranda and Orders dated December 21, 2007 and January 14, 2008.  Most Plaintiffs were represented by counsel.  Prior to the hearing the Court had received and reviewed cross Motions for Summary Judgment filed in all of the above-captioned cases, except for the last case.[1]  In addition, the government has filed the administrative record on behalf of the Federal Bureau of Investigation ("FBI") and a separate administrative record for the United States Citizenship and Immigration Service ("USCIS").  The declaration and testimony by Mr. Donald Neufeld of the USCIS was received.  In addition, an examination was made of the website accessibility of data for all of the above-named Plaintiffs.[2]

---

[1]The parties in this case (Civ. No. 08-195) shall file cross Motions for Summary Judgment by February 1, 2008 and may incorporate by reference arguments made in briefs by other parties.

[2]The parties verified at the hearing that there was no dispute as to the underlying facts in these cases, specifically the facts relating to each Plaintiff concerning their having filed a petition for naturalization, their eligibility, waiting period, and delay relating to their petitions for naturalization.  There are some lingering fact issues as to why the status of some of the Plaintiffs is not readily ascertainable on the USCIS website.  However, the parties are in agreement that there are no factual issues in these cases requiring a trial.  At several points, the Court held off-the-record discussions with counsel concerning suggested methods of resolution of these cases to secure a more prompt disposition of naturalization petitions in general, as well as resolution of the individual complaints.  These efforts should continue.

One of the Plaintiffs, Jean Elissaint, is seeking a change of status as opposed to seeking naturalization. The Court was advised that the background work on his change of status Petition has been completed and that a disposition of his Petition is expected shortly. Without objection and because that case presents some issues different from the other cases, the Court will vacate the stay of proceedings as to Mr. Elissaint, and expects that his case will become moot.

Based on the administrative records that have been filed and the testimony of Mr. Neufeld, it is undisputed that there has been a tremendous increase across the country in the number of petitions for naturalization filed by individuals who have already achieved legal residency in the United States. These individuals are referred to as Licensed Permanent Residents ("LPR"), or having "green card" status. A person who has achieved LPR status must reside in the United States for five years before becoming eligible for naturalization for citizenship. The delays that have been documented in these (and many other) cases in processing naturalization petitions have resulted from the type of background checks that the USCIS requires before the petition for naturalization is approved. There is no dispute as to the reasons for, the expense of, or the size of the backlog. Although an individual must pay application fees in filing petitions before the USCIS, the cost of operating the various programs, which includes the background investigations, far exceeds the "user fees" paid by the applicants.

There is no evidence in the record that Defendants are holding up the petitions of any of the named Plaintiffs, or any applicant, because of any bad faith, bias, malice or other obviously improper reason.

Nonetheless, in the absence of a much-needed change in administrative procedures and after a review of the pleadings, publically available USCIS documents, and the record in this

case, the Court has discerned several legal issues. One significant legal issue that requires resolution before there can be an adjudication of the complaints of the individual Plaintiffs relates to the propriety and extent of the background checks, which are delaying action on all of Plaintiffs' petitions.[3]

## I.      Nature of Background Checks

As Mr. Neufeld testified, USCIS seeks three kinds of background checks for individuals who have already achieved LPR status, consisting of a fingerprint check, a name check, and a Interagency Background Information System ("IBIS") check.

A fingerprint check is a basic review of an individual's criminal background. Similar to what can be learned by an arresting police officer, this check includes arrests and convictions and has a quick response time, usually of several minutes. This procedure is what is commonly referred to as a "criminal record check." There is no evidence this check causes any significant delays.

As detailed in the materials provided by the FBI,[4] an FBI "name check" is a generic term

---

[3] At the hearing, there was some explanation that the government had considered, but rejected, requesting consolidation of all similar cases pending across the United States pursuant to 28 U.S.C. § 1407. No Plaintiff's counsel responded affirmatively that any Plaintiff is ready to seek class action treatment of these cases. Government counsel verified the Court's understanding that although some cases have been filed as class actions, no court has yet certified a class of claims similar to the present Plaintiffs. Cf. Judge Robreno's recent Memorandum, certifying a settlement class of Social Security recipients. Civ. No. 06-5304, Doc. No. 77. There is still a lingering issue as to why the government has not requested that the cases pending in this district be consolidated before one judge to eliminate the need for duplication of briefing and consideration of identical legal issues.

[4] The Court gained much of its information from the declaration and supplemental declaration of Michael A. Cannon, Section Chief of the National Name Check Program Section at FBI headquarters.

reflecting a detailed investigation into an individual's background that consists not only of any criminal record, but also whether the individual's name appears as a subject or otherwise in any type of FBI investigative file for any reason.[5]  Most requests for name checks are resolved quickly with no information found.  A further percentage of name check investigations can be resolved within sixty days, and a further percentage within six months.  One percent of the total number of FBI name checks requested, however, result in investigations of six months or longer.  It is obvious that the petitions for all of the Plaintiffs in these cases are in the latter category since their name checks have taken several years, without resolution.[6]

      Mr. Neufeld also briefly described the IBIS check generally, which is internally

---

[5]The record discloses details about the FBI name check program, which need not be set forth in this Memorandum.  The extent of the name check is discretionary with USCIS, and the amount of information that the FBI puts into its index concerning any particular individual is also discretionary with an FBI agent or a supervisor.  Although much of the FBI system is automated, there are a number of instances in which the actual paper copy of an FBI file must be secured and individually reviewed to complete a thorough name check.

[6]The Court notes that the Director of USCIS, in testimony to Congress which is part of the administrative record, has explained how USCIS is attempting to accelerate these petitions while protecting national security.  See Naturalization Delays:  Causes, Consequences and Solutions:  Hearing Before the SubComm. on Immigration, Citizenship, Refugees, Border Security, and Int'l Law of the H. Comm. on the Judiciary, 110th Cong. 3-6 (2008) (written testimony of Emilio T. Gonzales, Director of USCIS).  There was also testimony along these lines by Mr. Neufeld.  In addition, the USCIS Ombudsman prepares a report every year to Congress, outlining, inter alia, problems in the name check program and making suggestions for improvements and expediting.  See, e.g. CIS Ombudsman Annual Report 2007, available at http://www.dhs.gov/xlibrary/assets/CISOMB_Annual%20Report_2007.pdf.  There has been legislation introduced, but not passed, which addresses this issue.  See, e.g. Comprehensive Immigration Reform Act of 2007, S. 1348, 110th Cong. § 245B(c)(3).  Although the Court recognizes that this issue is one that is frequently discussed, it has not been resolved.  The Court's obligation, as stated before, is not to become a manager of naturalization petitions, but rather to resolve legal issues presented by these cases.  Legal research suggests, and the record of these cases confirms, that USCIS procedures are the problem, and all these cases cry out for a global solution.  However, this may be beyond the Court's authority.

completed by USCIS. This check reviews other data and provides an automated immediate response.

Although the principal legal issue presented by the Plaintiffs in these cases is whether, under applicable law, the Court can require Defendants to act on their petitions, the Court discerns an underlying legal issue as to the propriety and authority of USCIS to require an FBI name check.

Mr. Neufeld's testimony and other documents reveal important background facts that are highly relevant. First, an individual who resides in a foreign country and applies for a visa to enter the United States must also go through an FBI name check. See Preventing Terrorism from Entering the United States: Hearing before the Subcomm. on Int'l Terrorism, Non-Proliferation and Human Rights of the H. Comm. On International Relations, 108th Cong. (2004) (statement of Robert J. Garrity, Jr., Deputy Asst. Director, Records Mgmt. Div., FBI).

Further, Mr. Neufeld established that an individual who seeks to become an LPR must also go through the fingerprint check and FBI name check process. An LPR who had a conviction for a serious crime would not be eligible to become a citizen, though this fact can be established by a fingerprint check.

Therefore, a legitimate question arises: since an applicant for naturalization has already gone through the FBI name check process twice, and the fingerprint check for a criminal history can be made quickly, what is the justification for requiring a third FBI name check when an LPR petitions to become a naturalized citizen? The Court does not necessarily discern this as a legal issue for the Court to decide in the first instance, but must, as part of the analysis under principles of Administrative Law, determine whether USCIS properly requires this check, particularly when

it has undisputedly resulted in such significant costs, hardships and delays.[7]

Mr. Neufeld did not have an answer to this question. He could not cite any Congressional authorization for the FBI name check process for naturalization applicants, nor was he aware of any USCIS regulation on this point. His declaration and testimony merely cite the only generic regulation so far brought to the Court's attention, appearing at 8 C. F. R. § 335.1, giving USCIS general authority to conduct an unspecified investigation into the applicant, including a review of

---

[7] In promulgating substantive rules, federal administrative agencies are required by the Administrative Procedures Act ("APA") to provide notice of the proposed rule and accept and consider comments from interested persons. 5 U.S.C. § 553. "Interpretive" rules are exempt from this requirement under 5 U.S.C. § 553(b)(3)(A). The Act does not provide a definition of "interpretative," however, and courts have sometimes found the line between interpretative and substantive rules to be unclear.

Although noting this lack of precision in Dia Nav. Co., Ltd. v. Pomeroy, 34 F.3d 1255 (3d Cir. 1994), the Court of Appeals concludes that "[t]he critical difference between legislative and interpretative rules . . . is that the former 'have the force and effect of law' while the latter do not . . . . Stated differently, legislative rules have 'substantive legal effect,' while interpretative rules typically involve construction or clarification of a statute or regulation." Id., quoting FLRA v. Department of the Navy, 966 F.2d 747, 762 n. 14 (3d Cir. 1992) (en banc). The Court continues:

> [W]hat distinguishes interpretative from legislative rules is the legal base upon which the rule rests. If the rule is based on specific statutory provisions, and its validity stands or falls on the correctness of the agency's interpretation of those provisions, it is an interpretative rule. If, however, the rule is based on an agency's power to exercise its judgment as to how best to implement a general statutory mandate, the rule is likely a legislative one.

Id., quoting United Technologies Corp. v. EPA, 821 F.2d 714, 719-20 (D.C. Cir. 1987). In a later case, the Court states, "If the [rules have] a substantive adverse impact on the challenging party, they are "legislative." Chao v. Rothermel, 327 F.3d 223 (3d Cir. 2003), citing FLRA v. U.S. Dep't of the Navy, 966 F.2d 747, 763 (3d Cir. 1992).

The government relies on Ahmadi v. Chertoff, 2007 WL 3022573 (N.D. Cal., 10/15/07) which rejects any impropriety in requiring FBI name checks. Unlike the present cases, however, Ahmadi addressed a Rule 12 motion to dismiss and thus did not have the benefit of a full summary judgment record as the Court does here.

records.[8]

The record also shows that USCIS has issued a "fact sheet" dated April 25, 2006 which describes the process for immigration security checks. This document makes clear that FBI name checks are not required for all applications, but does not disclose how a decision is made whether to require a name check.

**II.     Administrative Agency Issues**

Generally, an administrative agency has discretion to adopt procedures to enable it to carry out its mandate as authorized by Congress. Given that naturalization applicants have already gone through the FBI name check process twice, the Court has genuine concerns as to whether there is any justification for USCIS requiring a third name check, as it has resulted in delays in these cases of several years, significant expenditures of public funds, expenses by these individuals, plus the resulting uncertainty in their personal and professional lives, and immeasurable impact on their families.

Indeed, one looking at this issue from a national security perspective could seriously question the priorities adopted by USCIS in its dealing with the one percent of naturalization applicants for whom name checks cannot be completed promptly, i.e., within six months. If these individuals are potentially dangerous to the security of the United States, it seems their applications should be expedited over all other work. The government should not allow

---

[8] "Subsequent to the filing of an application for naturalization, the Service shall conduct an investigation of the applicant. The investigation shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application. The district director may waive the neighborhood investigation of the applicant provided for in this paragraph." 8 C. F. R. § 335.1.

individuals who are threats to the security of our country to remain at large in the United States. These individuals should instead be placed in custody as quickly as possible, have their LPR status revoked, and be deported, forthwith. Some Plaintiffs in these cases have been waiting over three years for a decision. The Court has no knowledge whether there is any fact in any of their backgrounds that marks them as a danger to the security of the United States. If they are truly a danger, however, why has USCIS allowed them to remain here for three years? Delaying their citizenship status does not eliminate the danger they may pose to our country; indeed, as LPRs, they can remain here indefinitely. It would seem that this group, estimated at one percent of all applicants, should be investigated more quickly, not more slowly, than everyone else. Indeed, logically, their petitions should be expedited, not to settle their lawsuits, but to protect our national security. This point which has been made in a different context by the USCIS Ombudsman, may be relevant as to the reasonableness of the name check program being implemented by USCIS without Congressional approval, notice, or hearing.

      The Court does not dispute that a detailed name check is an appropriate security measure in many instances. Certainly, individuals who seek highly sensitive governmental positions should be subject to the most thorough background scrutiny; also, there is obvious good reason that individuals who have recently been admitted to the United States and/or are applying for LPR status should be subject to thorough background checks.

      The only security justification that Mr. Neufeld could offer the FBI name check procedure as a prerequisite for granting a naturalization petition was that once someone becomes a citizen, the process of de-naturalization for cause, such as dishonest answers on the application form, is long and laborious.

Thus, the principal legal question is whether USCIS can properly require a name check for all naturalization applicants without any Congressional statute,[9] authorization or rule promulgation within its own agency – particularly where the name check process for Plaintiffs is taking several years for completion, and information as to the completion date or reason for the delay is unavailable.[10]

Another legal issue remains as to whether, if relief is to be granted to the Plaintiffs, the Court should do so in these proceedings, or remand to the USCIS, with or without time limits. The parties are welcome to brief these issues as well.

An appropriate Order follows.

---

[9] The Court repeats the reference it made in a prior Memorandum that the only specific Congressional authorization for USCIS background checks is the reference to "a full criminal background check" appearing in Public Law 105-119. See Civ. No. 07-0445, Doc. No. 19.

[10] The FBI materials in the record show that a name check may mean many different things depending on the sensitivity of the position to which the individual aspires, the amount of money which the requesting agency is willing to spend, and other factors. In other words, a "name check" is only a generic description and the FBI conducts different types of name checks. The record does not reveal whether the name check which is performed for naturalization applications is always more complex than other name checks or why it takes so long to complete in any particular case.

**ORDER**

AND NOW, this 25th day of January, 2008, for the reasons stated in the foregoing Memorandum, it is hereby ORDERED as follows:

1. Briefs are due be February 1, 2008 on the above-stated legal issues and also on the lack of availability of information on the USCIS website. Plaintiffs' counsel should cooperate and try to file a single brief.

2. The preliminary injunction enjoining the Defendants from resolving any of these cases is vacated as to Plaintiff Jean Elissaint, C.A. No. 07-4747, but continued as to all other Plaintiffs,[11] until February 8, 2008, or further Order.

3. The Court is available if the parties wish to explore settlement of these issues concerning these cases or on a wider basis.

BY THE COURT:

/s/ Michael M. Baylson

Michael M. Baylson, U.S.D.J.

O:\CIVIL 07\07-0445 Mocanu v. Mueller\Mocanu 07-445 Cusumano 07-971 Barikbin 07-3223 Eliassaint 07-4747 Memo 1-25-08.wpd

---

[11] Mr. Neufeld confirmed the Court's suspicion, as stated in the Memorandum of January 11, 2008 (Civ. No. 07-445, Doc. No. 19), that USCIS seeks to resolve all cases filed in Court before they reach trial. Thus, the inference remains strong that these cases are defended just to "buy time" until trial is close. This admission may require the government to review its entire approach to these cases and is further reason to seriously question whether the USCIS procedures can continue without detailed notice, hearing and promulgation of rules, as well as Congressional oversight.